UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BALLARD CONDOMINIUM OWNERS
ASSOCIATION, a Washington non-profit
corporation, as assignee of BALLARD
RESIDENTIAL, LLC,

    Plaintiff,

v.

GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA f.k.a.
FULCRUM INSURANCE COMPANY, a
Surplus Line Insurer doing business in
Washington, and SCOTTSDALE
INSURANCE COMPANY, a Washington
Limited Liability Company,

    Defendants.

No. C09-484RSL

ORDER GRANTING MOTION TO STAY

## I. INTRODUCTION

This matter comes before the Court on "Defendant Scottsdale Insurance Company's Motion for Stay of Proceedings," Dkt. #14. Defendant Scottsdale Insurance Company ("Scottsdale") moves to stay the pending declaratory action so as to avoid a conflict of interests while it is simultaneously representing Pacific Rim Framing Company ("Pacific Rim"), its

ORDER GRANTING MOTION TO
STAY - 1

insured, in a construction defect lawsuit brought by the same plaintiff. Plaintiff asserts that it will be irreparably harmed by a stay. Dkt. #17 at 9. For the reasons set forth below, the Court grants defendant's motion to stay.

## II. DISCUSSION

**A. Background**

Ballard Residential was the owner and general contractor of Ballard Condominiums, a five-story, 162-unit residential building. Ballard Residential entered into written contracts with several contractors, including Pacific Rim. According to the contract, Pacific Rim was required to procure insurance with the general contractor "named as an additional insured." Dkt. #18, Ex. 1.

In August 2005, Ballard Condominiums Owners Association ("Owners Association") filed suit against Ballard Residential asserting various construction defects. Ballard Residential subsequently filed a third-party complaint against Pacific Rim and several other subcontractors, asserting breach of contract and breach of the duties to defend and indemnify. Scottsdale defended the third-party claim against Pacific Rim under a reservation of rights.

Ballard Residential tendered the suit to Scottsdale on February 8, 2007, claiming coverage as an additional insured under Pacific Rim's policies. Scottsdale eventually denied coverage, stating that "Ballard [Residential] does not qualify as an additional insured under the Scottsdale policies," and that "Scottsdale has no obligation to indemnify its named insured Pacific Rim for any alleged contractual liability to Ballard [Residential]." Dkt. #16, Ex. 6.

On October 1, 2007, the Owners Association settled its claims against Ballard Residential for $9,339,800. As part of the settlement agreement, Ballard Residential paid $1.25 million and assigned all causes of action against the subcontractors and all rights Ballard Residential possessed as an additional insured under the subcontractors' insurance policies in exchange for a

ORDER GRANTING MOTION TO
STAY - 2

release from liability, a covenant not to execute, and indemnification from unit-owner claims and reimbursement claims. Litigation against the subcontractors continued, with the Owners Association stepping into Ballard Residential's shoes.

Pacific Rim moved for summary judgment, and the superior court granted the motion, finding that the Owners Association had produced no evidence that Pacific Rim's work caused the alleged construction defects. After an unsuccessful motion for reconsideration, Ballard Residential appealed to the Washington Court of Appeals, which recently affirmed summary judgment for Pacific Rim. Dkt. #16, Ex. 8. However, Division I of the Court of Appeals has not yet issued its mandate.[1]

Alongside the underlying suit against Pacific Rim, the Owners Association filed the pending declaratory action against Scottsdale seeking defense and indemnity costs for its settlement plus treble damages under the Insurance Fair Conduct Act. In its Answer, Scottsdale denied that Ballard Residential is an additional insured under its policies and, in the alternative, noted its intent "to assert every applicable term, condition, and exclusion as a defense to coverage," including the provisions excluding Pacific Rim's work. Dkt. #16, Ex. 10 at 6. Scottsdale now moves to stay, "where its defense of the declaratory action runs contrary to Pacific Rim's interests and where judicial economy will be served by allowing the state courts to finally establish whether Pacific Rim's work caused any harm." Dkt. #14 at 6.

**B. Analysis**

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are

---

[1] While Scottsdale originally anticipated that Division I would issue its mandate on or about may 27, 2009, Dkt. #14 at 3 n.3, the Owners Association has since filed a motion for reconsideration, see Dkt. #23 at 6 n.10.

ORDER GRANTING MOTION TO
STAY - 3

judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the Court." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (1979).

It is unclear to what extent the outcome of the underlying suit will inform the Court's decision in the present case. Scottsdale suggests that plaintiff's claims in this case hinge on Pacific Rim's liability, the issue being litigated in the underlying suit. See Dkt. #23 at 3; id. at 5-6 ("Only if Division I grants a Motion for Reconsideration or the Washington Supreme Court reverses on appeal could [plaintiff] possibly recover these sums."). Plaintiff contends that collateral estoppel will not apply because the Owners Association settled its claims with Ballard Residential before the court ruled on Pacific Rim's motions and because the trial court did not rule on whether Pacific Rim violated the Washington Condominium Act. Dkt. #17 at 12. However, even though the Owners Association and Ballard Residential settled their claims, the lawsuit against Pacific Rim continued and the state courts have ruled on the merits of that case. Morever, Scottsdale notes that the state court denied plaintiff's attempt to add a claim under the Washington Condominium Act, finding that the motion to amend the complaint was filed in bad faith because it was not well grounded in law. Dkt. #23 at 3 & n.6 (citing Dkt. #24, Ex. 6). Plaintiff also suggests that, regardless of the outcome of the underlying suit, Scottsdale had a duty to defend its additional insured during the original proceedings. Dkt. #17 at 13.

Even assuming that the outcome of the underlying suit will not preclude any of the claims in the present action, the Court finds that, at the very least, the state court's conclusions "may be of valuable assistance to the [C]ourt in resolving" some elements of the claims presented. Leyva, 593 F.2d at 863. It is apparent that the issues of coverage and liability are intertwined enough that the Court and counsel will benefit from a final determination in the underlying suit.

Scottsdale has also identified a potential conflict of interests that may leave it vulnerable

ORDER GRANTING MOTION TO
STAY - 4

to a bad faith action by the named insured. "An insurer defending its insured under a reservation of rights has 'an enhanced obligation of fairness toward its insured' because of the '[p]otential conflicts between the interests of insurer and insured, inherent in a reservation of rights defense.'" Mutual of Enumclaw Ins. Co. v. Dan Paulson Constr. Inc., 161 Wn.2d 903, 915 (2007) (quoting Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 383 (1986)). In accordance with this "enhanced obligation," an insurance company "must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk." Tank, 105 Wn.2d at 388.

Scottsdale is in the process of defending Pacific Rim; in that litigation, Pacific Rim contests liability for any construction defects. In order to defend itself in the present coverage dispute, however, Scottsdale must contend that certain defects were excluded from coverage because they resulted from work performed by Pacific Rim. Simultaneously defending both itself and its named insured, therefore, may require Scottsdale to talk out of both sides of its mouth. Its argument on the merits of one case may interfere with its arguments on the merits of the other. See Mutual of Enumclaw, 161 Wn.2d at 914-15 (2007) (quoting 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 8:3, at 8-11 to -12 (5th ed. 2007)) (insurer "must avoid seeking adjudication of factual matters disputed in the underlying litigation because advocating a position adverse to its insured's interest would 'constitute bad faith on its part'").

Plaintiff contends that Scottsdale is duty-bound to protect plaintiff's interests as well; according to plaintiff, Scottsdale has "the same obligations to both [its] additional insured and [named] insured." Dkt. #17 at 10. While it is true that Scottsdale is in the unique position of defending one insured while being sued by another potential insured, the underlying principles of Mutual of Enumclaw remain the same: Scottsdale's coverage defense must not "directly

ORDER GRANTING MOTION TO
STAY - 5

interfere in the defense it [is] providing to [Pacific Rim]." Mutual of Enumclaw, 161 Wn.2d at 919. The existence of two potential insureds does not mean that the insurer must sacrifice the best interest of one insured in favor of the other. While the Court finds a potential prejudice to Pacific Rim if Scottsdale were to claim that Pacific Rim was responsible for construction defects in this coverage dispute, cf. id. at 918 ("To the extent that [the insurer] prevailed, it would have directly prejudiced [the insured's] position in the [underlying suit], clearly an act of bad faith."), a stay in the case will not unduly prejudice the merits of plaintiff's case.

Although there is no apparent prejudice, plaintiff does assert that a stay will result in irreparable harm. Plaintiff contends that a delay in this case will force it to pay exorbitant amounts in interest on the line of credit it has received to start repairs on the building. Dkt. #17 at 9. "As a consequence, the Owners Association will be forced to levy a special assessment against all of the homeowners in the building." Id. at 10. Assuming that plaintiff has a likelihood of prevailing in the present action, a substantial delay in the case may have substantial economic effects on plaintiff and its individual homeowners. However, given the current trial schedule, the Court sees no immediate risk that plaintiff will be irreparably harmed by waiting for the state court to issue a mandate or the Washington Supreme Court to deny review.[2] Although plaintiff suggested that discovery and motion practice should be complete by January of 2010, id., the Court's "Minute Order Setting Trial Date and Related Dates," Dkt. #28, issued after the parties completed briefing for this motion, sets the discovery cutoff at May 16, 2010 and the motions cutoff one month later. It is likely that the Court may not need to continue these deadlines once the stay is lifted since both parties may still have a reasonable amount of time to

---

[2] If the Washington Supreme Court grants a petition for review in the underlying suit, however, Scottsdale must submit briefing explaining why the stay should not lift, and plaintiff will have an opportunity to respond.

ORDER GRANTING MOTION TO
STAY - 6

engage in discovery in accordance with the current schedule. While the Court understands that a delay that stretches significantly beyond the existing schedule may result in significant economic harm to plaintiff, there is no indication at this time that such an inordinate delay is likely. Cf. Leyva, 593 F.2d at 864 ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

## III. CONCLUSION

It is now, therefore, ORDERED:

1. Scottsdale's motion to stay (Dkt. #14) is hereby GRANTED.

2. All deadlines in this matter are hereby vacated.

3. Scottsdale shall notify the Court within five (5) business days after any of the following events transpire: (1) the Washington State Court of Appeals, Division I issues its mandate in Ballard Residential, LLC v. Pacific Rim Framing Co., Inc., No. 61221-2-I, 2009 WL 1111184 (Wn. Ct. App. Apr. 27, 2009); (2) the Washington State Court of Appeals grants reconsideration of that action; (3) the Washington Supreme Court accepts a petition for review in that action; or (4) the Washington Supreme Court denies a petition for review in that action.

4. If Division I issues a mandate or the Washington Supreme Court denies a petition for review in the underlying suit, the stay shall lift. Scottsdale shall submit a proposed Order Regarding Trial Date and Related Dates within ten (10) days of said events.[3]

5. If the Washington Supreme Court grants a petition for review in the underlying suit, Scottsdale shall submit briefing to this Court detailing why the stay should not lift. Scottsdale shall submit materials within ten (10) days of said event, noting the motion pursuant to LR

---

[3] As indicated above, the Court may determine that the case will proceed on the original trial schedule.

ORDER GRANTING MOTION TO
STAY - 7

7(d)(3).

DATED this 6th day of July, 2009.

_____
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO
STAY - 8